IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-089-RJC-DCK

| | |
|---|---|
| MARIANO OSPINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION AND |
| ) | ORDER |
| GRIESINGER ASSOCIATES, INC., and, ) | |
| LINO J. PIEDRA ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Defendant Griesinger Associates Inc.'s "Motion To Dismiss" (Document No. 15) and Plaintiff's "Motion To Compel Defendant Lino J. Piedra To Respond To The Complaint" (Document No. 17). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the "Motion To Dismiss" be <u>denied without prejudice in part</u> and <u>granted in part</u>, and order that the "Motion To Compel Defendant Lino J. Piedra To Respond To The Complaint" be <u>denied</u>.

**I. BACKGROUND**

Plaintiff ("Plaintiff" or "Ospina"), appearing *pro se*, initiated this action with the filing of a "Complaint" (Document No. 1) against Defendants Lino J. Piedra ("Piedra") and Griesinger Associates, Inc. ("Griesinger") (collectively, "Defendants") on February 12, 2020. Plaintiff Ospina is a resident of Charlotte, North Carolina and is "the President and CEO of Ospina Coffee International, Corp. [] a North Carolina corporation." (Document No. 1, p. 1). Defendant Piedra is a resident of Colorado and is the Executive Vice President of Griesinger Associates, Inc. <u>Id.</u>

Plaintiff alleges that Defendant Griesinger Associates, Inc. is an inactive Virginia corporation with a principal place of business in Washington, DC.[1] Id.

The Complaint asserts the following claims for relief: (1) Breach of Contract; (2) Injunctive Relief; (3) Violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1; (4) Civil Conspiracy; (5) Fraud; (6) Unjust Enrichment; and (7) Punitive Damages. Id. at pp. 8-10.

Plaintiff's claims seem to arise from Defendants' alleged violation of an "Engagement Letter" (Document No. 1-1, p. 2), wherein Plaintiff alleges that Defendants agreed to carry out a "sale of the Ospina Coffee Brand…at Tajan auction house in Paris, France." (Document No. 1, p. 4). Plaintiff alleges that since the sale did not occur, Defendants are in breach of contract. Id. Plaintiff indicates that he "was looking to find a buyer within the luxury market for his 'Ospina Coffee' Brand, trademarks, copyrights and intellectual property," and he initially approached Piedra to inquire about certain European entrepreneurs. Id. at p. 5. Piedra was not familiar with the entrepreneurs in whom Ospina was interested, but a few months later he reached out to Ospina because he had talked to the CEO of Tajan, an auction house in Paris, about possibly selling the Ospina Coffee brand there. Id. Plaintiff and Piedra then signed an engagement letter on July 16, 2019, and Plaintiff completed payment of a $10,000 retainer fee on August 7, 2019, anticipating that the auction would take place in October 2019. Id. at pp. 5-6. Plaintiff alleges that Defendant Piedra valued the brand at $348 million. Id. The "Engagement Letter" indicates that Griesinger

---

[1] Piedra disputes this fact, contending in his response to Plaintiff's "Motion To Compel Defendant Lino J. Piedra To Respond To The Complaint" that Griesinger is "an active corporation in good standing in Virginia." (Document No. 22, p. 3). Plaintiff in his reply to Piedra's response asserts that he learned on July 16, 2019 – the day that he signed the engagement letter for the contemplated transaction described in the rest of this Background section – that Griesinger was suspended and inactive, and per the State Corporation Commission of the Commonwealth of Virginia, the "company had been suspended for two years for lack of payment of the annual fees." (Document No. 24, p. 2). However, Plaintiff alleges, on February 26, 2020, Piedra paid the delinquent charges after receiving the Complaint on February 12, 2020 – the day Plaintiff filed the Complaint in this Court. Id.

would "assist [Ospina] in arranging and facilitating the sale of certain brands owned by [Ospina] to a buyer or buyers at an auction to be held by [sic] in Paris." (Document No. 1-1, p. 2).

On August 19, 2019, Piedra informed Ospina that the CEO of the Tajan auction house indicated to him that "the law in France prohibited the sale alone of intangible assets (brands or trademarks) at auction, and that in order to move forward with the sale of the Ospina Coffee Brand Ospina would need to include in the sale the [corporation itself]." (Document No. 1, p. 6). Ospina protested that the sale of Ospina Coffee International, Corporation ("OCI") was not mentioned in the engagement letter, and that moreover, such a sale would be impossible because Ospina was not the complete owner of OCI and did not have total control over it. Id. Although Plaintiff alleges that on September 9, 2019, he and Piedra discussed alternative possibilities to comply with French law, one of which was Piedra's suggestion "to create a shell company or to offer the sale of all the Ospina Coffee companies together with the Brand," Ospina did not want to pursue those alternatives, believing them to be outside the scope of the original agreement within the engagement letter. Id. at p. 7.

Ospina informed Piedra that if Defendants could not comply with the terms of the engagement letter, the relationship between Plaintiff and Defendants would end and Defendants should return the $10,000 retainer fee. Id. Defendants refused to refund the retainer fee, explaining that "retainers are not refundable, unless such provision is specifically and expressly described in the engagement letter." Id. Plaintiff consulted with an attorney, and the attorney sent Defendants two demand letters, on September 16, 2019 and September 25, 2019, respectively, expressing Plaintiff's position that Defendants failed to perform their obligations under the contract, and thus, return of the $10,000 retainer fee was necessary. (Document No. 1-1, pp. 3-6). The present lawsuit followed when Defendants ignored the demand letters. (Document No. 1, p. 7). Ospina alleges

that his losses from Defendants' alleged breach of contract include the loss of the $10,000 retainer fee, the loss of $250,000 in real estate assets, and the loss of $250,000 in lost business opportunities. Id. at p. 4.

Notably, on August 5, 2020, the Honorable Robert J. Conrad, Jr. granted Plaintiff's application to proceed *in forma pauperis* under 28 U.S.C. § 1915. (Document No. 5). As part of that order, the U.S. Marshals Service was ordered to serve process on Defendants Piedra and Griesinger. Id. at pp. 4-5. Although the summons was returned executed on September 15, 2020 as to Bowen & Logan, PLLC on behalf of Griesinger (Document No. 12), the summons was returned unexecuted as to Piedra on that same day (Document No. 13).[2]

Defendant Griesinger Associates Inc. filed a "Motion To Dismiss" on September 28, 2020 (Document No. 15), along with a "Memorandum Of Law In Support Of Defendant Griesinger Associates Inc.'s Motion To Dismiss Complaint" on the same day. (Document No. 16). By the pending motion, Defendant Griesinger seeks dismissal of Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Document No. 15, p. 1). Plaintiff filed a "Motion In Opposition To Defendant Griesinger Associates, Inc.'s Motion To Dismiss Complaint" on October 13, 2020. (Document No. 19). Griesinger filed a "Reply In Support Of Defendant Griesinger Associates Inc.'s Motion To Dismiss Complaint" on October 20, 2020. (Document No. 23). Plaintiff filed a "Response In Opposition To Defendant Griesinger Associates Inc.'s Motion To Dismiss Complaint" (a surreply) without leave of Court on November 2, 2020. (Document No. 25). See Local Rule 7.1(e) (prohibiting the filing of surreplies without leave of Court). The pending "Motion To Dismiss" has now been fully briefed and is ripe for review.

---

[2] Bowen & Logan, PLLC is Griesinger's registered agent. (Document No. 22-1, p. 2).

Ospina filed a "Motion To Compel Defendant Lino J. Piedra To Respond To The Complaint" on October 6, 2020. (Document No. 17). By that pending motion, Plaintiff seeks an order from the Court compelling Piedra to: (1) "accept service of process in this case"; (2) "appear in Court to take responsibility of his illegal acts"; and (3) "to respond in a timely manner to the Complaint of this case." Id. at p. 2. Piedra filed a "Response To Plaintiff's Motion To Compel Defendant Lino J. Piedra To Respond To Complaint" on October 19, 2020. (Document No. 22). Ospina filed "Plaintiff's Reply To Defendants' Response To Plaintiff's Motion To Compel Defendant Lino J. Piedra To Respond To The Complaint" on October 30, 2020. (Document No. 24). The pending "Motion To Compel Defendant Lino J. Piedra To Respond To Complaint" has now been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

### A. Motion To Dismiss For Failure To State A Claim

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993). Furthermore, "[w]hile courts often construe pleadings filed by *pro se* litigants more liberally than those filed by represented parties, the 'plaintiff must still allege facts sufficient to state all of the elements of the claim…conclusory statements with insufficient factual support…will simply not suffice.'" Feimster v. Universal Health Servs., Inc., 2015 WL 3884434, at *3 (W.D.N.C. June 24, 2015) (quoting Pharr v. DesignLine USA, LLC, 2012 WL 995341, at *4 (W.D.N.C. Mar. 22, 2012)).

**B. Motion To Compel**

The Federal Rules of Civil Procedure specify the methods by which service is to be conducted when the individual to be served is within a judicial district of the United States at Rule 4(e). Moreover, "[a]bsent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant." Koehler v. Dodwell, 152 F.3d,

6

204, 306 (4th Cir. 1998); accord Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987). Rule 4(e)(1) provides that service can be made in accordance with the methods prescribed by "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed.R.Civ.P. 4(e)(1). North Carolina state law specifies a number of manners of service for natural persons, some of which include mailing a copy of the summons and of the complaint by "registered or certified mail, return receipt requested," and "mailing a copy of the summons and of the complaint by signature confirmation as provided by the United States Postal Service." N.C.G.S. § 4(j). Under Colorado state law (where service on Defendant Piedra was to be made), personal service is the default, and "service by mail [] shall be allowed only in actions affecting specific property or status or other proceedings in rem." Colo.R.Civ.P. 4(g). Furthermore, when a plaintiff is permitted to proceed *in forma pauperis* by a court under 28 U.S.C. § 1915, the court is required to order that "service be made by a United States marshal." Fed.R.Civ.P. 4(c)(3).

### III. DISCUSSION

#### A. Motion To Dismiss

Defendant Griesinger's "Motion To Dismiss" asks the Court to dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Document No. 15, p. 1).[3] With respect to the breach of contract claim, Griesinger contends that it did fully perform its obligations under the engagement letter terms – thus asserting that Plaintiff misunderstands the terms of the contract. (Document No. 16, p. 9). Griesinger suggests that "Defendants did not guarantee or assure Plaintiff that his IP would be sold for a

---

[3] Notably, Defendant Piedra does not join the motion "only because he has not been served with civil process in accordance with Rule 4 of the Federal Rules of Civil Procedure." (Document No. 16, p. 1 n.1). Griesinger, however, indicates that "the arguments advanced in this Motion appl[y] equally to Mr. Piedra." Id.

specific price, or be sold at all." Id. at p. 10. Rather, "Defendants agreed only to 'assist' Plaintiff and 'facilitat[e]' a potential sale," which they did with "substantial effort." Id. Indeed, as argued in Defendant's reply, "Piedra provided precisely the kind of assistance regarding the potential sale for which Plaintiff had bargained." (Document No. 23, p. 8). Thus, Griesinger argues, there is no breach of contract claim, and that claim must be dismissed. (Document No. 16, p. 11). Relatedly, given the clear focus of Plaintiff's Complaint on the alleged breach of contract – which was an express contract memorialized in the parties' engagement letter – Griesinger argues that the unjust enrichment claim must fail because it is precluded by the "existence of an enforceable contract among the parties." Id. at p. 21.

With respect to Plaintiff's claim for injunctive relief, Griesinger argues that an injunction prohibiting Defendants from "withholding Plaintiff's retainer fee" is improper because monetary damages can adequately compensate Plaintiff for any injury on that front, thus precluding an award of injunctive relief. Id. at pp. 11-12. Moreover, as Griesinger points out, Ospina does not allege any "continuing conduct or ongoing damages" that would be necessary for the entry of an injunction. Id. at p. 12.

Plaintiff alleges in the Complaint that Defendants violated the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") at N.C. Gen. Stat. § 75-1.1. (Document No. 1, pp. 8-9). Defendant argues for the dismissal of the UDTPA claim given the Complaint's clear focus on the breach of contract action. (Document No. 16, p. 13). In so doing, Griesinger cites case law that supports the proposition that a UDTPA claim is inappropriate when the crux of the action centers upon a breach of contract dispute. Id. at pp. 13-16. Griesinger argues that the fraud claim should be dismissed for the same reason – when the core of the lawsuit is a breach of contract claim, a tort claim such as fraud is inappropriate. Id. at p. 18.

8

On Plaintiff's claim for civil conspiracy, Griesinger argues that it must be dismissed under Rule 12(b)(6) because (1) civil conspiracy is not a standalone claim; and (2) civil conspiracy requires demonstrating an agreement between two or more persons, and Plaintiff has failed to show wrongdoing by any party other than Piedra. Id. at pp. 16-17. Griesinger supports its latter argument by citing to the Fourth Circuit's recognition of the intracorporate conspiracy doctrine, contending that Piedra and Griesinger are not considered two separate individuals for conspiracy purposes because an agent of a corporation (here, Piedra) "cannot conspire with" the corporation itself, as the agent's actions are attributed to the corporation. Id. at p. 17, n.8.

Plaintiff's fraud claim, in Defendant's view, is pleaded neither with particularity, as Rule 9 requires, nor does he claim that any of Piedra's representations to him were false or "made with any intent to deceive." Id. at 20. For that reason, Defendant argues that Plaintiff has failed to plead a fraud claim and that claim should be dismissed under Rule 12(b)(6). Id.

Finally, as to Plaintiff's separate claim for punitive damages, Griesinger contends that punitive damages are a remedy and not a separate cause of action. Id. at p. 22. Even as a remedy, though, Griesinger argues that punitive damages would be inappropriate here because Plaintiff has not pleaded facts demonstrating aggravating factors, and such damages are barred in breach of contract actions. Id. at pp. 22-24.

In opposition, Plaintiff disputes several of Griesinger's characterizations of the background facts, labeling them as "false and misleading." (Document No. 19, p. 6). Plaintiff's response to Griesinger's motion to dismiss, however, does not attempt to rebut Griesinger's legal arguments in support of its motion to dismiss under Rule 12(b)(6). Rather, Ospina takes issue with Defendant's portrayal of the facts in his Complaint. The major disputes of fact will be summarized here. First, Ospina contends that the $10,000 retainer fee was "contingent on Defendant Piedra

9

performing exactly as agreed." Id. at p. 7.  Second, Ospina disputes Griesinger's timeline, contending that until September 9, 2019, they never discussed selling "any of [the] Ospina Coffee partner companies, subsidiaries, or affiliates" (rather than at the time of Piedra's communication on August 19, 2019 to Ospina regarding the French law prohibiting the sale of intellectual property without an "accompanying ownership interest in an operating entity," as Griesinger suggests in its memorandum supporting its motion to dismiss) (Document No. 16, p. 6). Id. at p. 8.  Third, without asserting that Piedra's representation of the content of the French law was false, Plaintiff does indicate that Piedra "failed completely to provide any evidence, documentation or proof of this allegation [that is, the existence of the French law]." Id.  The failure to suggest that Piedra's representation of French law was false thus falls short of the burden to make out "the necessary elements of actionable fraud," Defendant argues in reply.  (Document No. 23, p. 7).  Finally, and most substantially, Plaintiff clarifies his understanding of what the contract required of Piedra and Griesinger: "to take the Ospina Coffee brand to sale at auction in Paris," which in Plaintiff's view, they failed to do – thus breaching the contract.  (Document No. 19, p. 8).  Plaintiff contends that "alternative proposals for sales structures" were not contemplated in the engagement letter. Id. at p. 9.

The Court will examine Defendant's arguments for dismissal for each claim below. Ultimately, the Court is persuaded that Plaintiff's Complaint alleges a breach of contract action, and the Court will respectfully recommend that Defendant's motion to dismiss be denied without prejudice as to that claim.  With respect to Plaintiff's other claims, however, the Court will respectfully recommend that Defendant's motion to dismiss be granted.

   **1. Breach of Contract Claim**

On a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), a district court must be careful that it "does not resolve contests surrounding the facts [or] the merits of a claim." Martin, 980 F.2d at 952. Here, the Court is convinced that there are contests surrounding the facts regarding what precisely the engagement letter foresaw as Defendants' obligations under the contract. Indeed, Griesinger's arguments for why they have fulfilled their contract performance obligations have convinced the Court that to grant the motion to dismiss as to the contract claim would be premature. Clearly, there are factual disputes as to what the contract required – although Griesinger suggests that it "agreed only to 'assist' Plaintiff and 'facilitate[]' a potential sale" (Document No. 16, p. 10), Plaintiff is quite obviously not of the same view. Plaintiff, on the other hand, takes the view that the contract required "tak[ing] the Ospina Coffee brand to sale at auction in Paris," and he highlights that he is not suggesting that Defendants "had the obligation or offered the guarantee to successfully achieve the sale of the Ospina Coffee brand." (Document No. 19, p. 8). At this motion to dismiss stage, the Court cannot resolve the merits of which position is correct as a matter of law. In any case, Plaintiff's breach of contract claim passes the Iqbal and Twombly standards to survive dismissal on a 12(b)(6) motion. Ospina alleges sufficient "facts to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Thus, the undersigned respectfully recommends that Defendant's motion to dismiss Plaintiff's breach of contract claim under Rule 12(b)(6) be denied without prejudice.

### 2. Standalone Claims for Injunctive Relief and Punitive Damages

Plaintiff makes separate, freestanding claims for injunctive relief and for punitive damages at Counts II and VII of the Complaint. (Document No. 1, pp. 8, 10). Both requests for injunctive relief and for punitive damages, however, are improper as standalone claims. Injunctions and

11

Case 3:20-cv-00089-RJC-DCK   Document 26   Filed 02/11/21   Page 11 of 20

punitive damages are forms of remedies rather than causes of action themselves. Bruton v. FirstHealth of the Carolinas, Inc., 2012 WL 5986788, at *2 (M.D.N.C. Nov. 29, 2012) ("[t]he law does not recognize a freestanding cause of action for 'injunctive relief' or 'punitive damages'…[i]n contrast, 'punitive damages' and 'injunctive relief' are forms of relief that can sometimes be granted when a party prevails on a cause of action"); accord Painter v. Doe, 2016 WL 4644495, at *7 (W.D.N.C. Sept. 6, 2016). Therefore, the undersigned respectfully recommends that Defendant's motion to dismiss both Plaintiff's claim for injunctive relief and his claim for punitive damages be granted.

### 3. Violation of the North Carolina Unfair and Deceptive Trade Practices Act

The essence of the dispute between Plaintiff and Defendants is whether Piedra and Griesinger lived up to their obligations under the engagement letter that served as the parties' contract. Accordingly, the Court is persuaded by Defendant's compelling argument that its motion to dismiss Plaintiff's claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act at N.C. Gen. Stat. § 75-1.1 should be granted. "In order to establish a claim for UDTP a plaintiff must show, (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." McManus v. GMRI, Inc., 2012 WL 2577420, at *5 (W.D.N.C. July 3, 2012) (citations and internal quotations omitted).

Both federal district courts in the Western District of North Carolina and North Carolina state courts "routinely dismiss UDTPA claims asserted in simple breach of contracts cases." M.J. Woods, Inc. v. Little Rapids Corp., 2016 WL 7494469, at *3 (W.D.N.C. Dec. 30, 2016) (quoting A-1 Pavement Marking, LLC v. APMI Corp., 2008 WL 2974103, at *5 (N.C. Super. Ct. Aug. 4, 2008)). According to the Fourth Circuit, "courts differentiate between contract and deceptive trade

practice claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law." Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (quoting Hageman v. Twin City Chrysler-Plymouth Inc., 681 F. Supp. 303, 306-07 (M.D.N.C. 1988)). "A simple breach of contract does not qualify as an unfair or deceptive act; instead, a plaintiff must allege 'some type of egregious or aggravating circumstances before the [UDTPA] applies.'" McManus, 2012 WL 2577420, at *5 (quoting Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 700 (M.D.N.C. 2011)). These aggravating factors might include "an intentional misrepresentation for the purpose of deceiving another and which has a natural tendency to injure the other." Id. However, where the examples given as aggravating factors "are conclusory and fail to state sufficient factual content to support a claim that is facially plausible," the court should dismiss the UDTPA claim because it is thus layered on top of what is at bottom a breach of contract action. McManus, 2012 WL 2577420, at *6.

Here, it is evident to the Court that Plaintiff's lawsuit is focused most centrally on Defendants' alleged breach of contract. Thus, for that reason alone, case law from the Fourth Circuit counsels that Defendant's motion to dismiss Plaintiff's Unfair and Deceptive Trade Practices claim should be granted. So, too, does the Court note that Plaintiff has failed to allege any "aggravating factors" in support of its UDTPA claim that would save it from dismissal. The only factors that Plaintiff lists in support of this claim include Defendants' "attempting to force Plaintiff to accept additional conditions in his Letter of Transmittal that were not required of or sought from any other stockholder, including non-competition, non-solicitation, and non-disparagement provisions, as a condition precedent to the receipt of merger consideration." (Document No. 1, pp. 8-9). None of these alleged actions are intentionally misrepresentative (and,

13

the Court notes, it is not clear how these facts even relate to Plaintiff's lawsuit), as required by case law for a UDTPA claim to succeed in a breach of contract action. The Court thus recommends that Defendant's motion to dismiss Plaintiff's UDTPA claim should be granted.

### 4. Civil Conspiracy

With respect to Plaintiff's standalone claim for civil conspiracy, such a claim "requires more than merely conclusory allegations that the [D]efendants conspired and agreed. Rather, the claim must include specific allegations that a defendant was aware of and complicit in wrongful conduct or that the defendant directly engaged in such wrongful conduct." Trudell Medical Int'l v. D R Burton Healthcare LLC, 2020 WL 4372133, at *2 (E.D.N.C. Mar. 23, 2020). The elements of a civil conspiracy claim (which, notably, "cannot be brought independent of properly-alleged claims for the underlying wrongdoing") include: (1) "an agreement between *two or more persons* to commit a wrongful act"; (2) "an act in furtherance of the agreement"; and (3) "damage to the plaintiff as a result of the wrongful act." Suntrust Mortg., Inc. v. Busby, 651 F. Supp. 2d 472, 488 (W.D.N.C. 2009).

Plaintiff has not provided in his Complaint any facts beyond mere conclusory allegations to suggest that there was a conspiracy in this case. Furthermore, it is not clear who Plaintiff is alleging engaged in the conspiracy beyond Piedra and Griesinger – which, because of the Fourth Circuit's recognition of the intra-corporate conspiracy doctrine, count as one individual. See Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 352-53 (4th Cir. 2013) ("a corporation cannot conspire with its agents because the agents' acts are the corporation's own") (citing ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002)). Thus, Plaintiff has failed to satisfy the basic requirements to prove civil conspiracy, failing to allege that two or more persons conspired and failing to provide more than "[t]hreadbare recitals" of the elements of civil conspiracy. Iqbal, 556

14

U.S. at 678. The undersigned respectfully recommends that Defendant's motion to dismiss Plaintiff's civil conspiracy claim should therefore be granted.

### 5. Fraud

In order to satisfy the elements of fraud, a plaintiff must show under North Carolina law: "(1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Central Nat'l Gottesman Inc. v. Nakos Paper Prods. Inc., 2019 WL 7670103, at *4 (W.D.N.C. Aug. 28, 2019) (quoting Food Lion, LLC v. Schuster Mktg. Corp., 382 F. Supp. 2d, 793, 797 (E.D.N.C. 2005)).

Just as Plaintiff's UDTPA claim should be dismissed because the center of this lawsuit is a breach of contract claim, so, too, does the undersigned respectfully recommend that Plaintiff's fraud claim be dismissed. The Fourth Circuit's law is clear on this point: "[i]t is plain that the mere failure to carry out a promise in contract does not support a tort action for fraud." Central Nat'l Gottesman Inc., 2019 WL 7670103, at *4 (citing Broussard, 155 F.3d at 346). Moreover, "where plaintiff does nothing more than assert that a promissor never intended to honor its obligations under an agreement, dismissal [of the fraud claim] as a matter of law is appropriate" because "failure to perform a promise can be the basis for fraud only where there is evidence the promisor had a 'specific intent' not to perform at the time a promise was made." Carolina Power & Light Co. v. Aspect Software, Inc., 2009 WL 256332, at *2 (E.D.N.C. Feb. 3, 2009) (quoting Norman v. Tradewinds Airlines, Inc., 286 F. Supp. 2d 575, 595 (M.D.N.C. 2003)).

Plaintiff here does nothing more than give conclusory allegations that it was "Defendants' intent [] to deceive Plaintiff, fraudulently induce him to believe in the sale of the Brand, and fraudulently extort money." (Document No. 1, p. 10). Just as Defendant argues in its motion to

dismiss, "Plaintiff does not claim that any such representation [Piedra made to him] was false[, n]or does he claim that any of them was made with any intent to deceive." (Document No. 16, p. 20). The kinds of allegations that Plaintiff does make constitute the sort of "conclusory statements" that Iqbal counsels are insufficient to survive a motion to dismiss under 12(b)(6). 556 U.S. at 678. Furthermore, Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud claims be stated "with particularity." Here, the "time, place, and contents of the false representations" are nowhere in the Complaint, thus failing to satisfy Rule 9(b)'s directive. See Central Nat'l Gottesman, 2019 WL 7670103, at *4. Thus, the undersigned respectfully recommends that Plaintiff's fraud claim be dismissed.

### 6. Unjust Enrichment

A claim for unjust enrichment will fail where there is an express contract. Triad Packaging, Inc. v. SupplyOne, Inc., 925 F. Supp. 2d 774, 787 (W.D.N.C. 2013) ("[t]hat a contract implied by law cannot be asserted where an express contract exists is horn book or blackletter law"). Thus, given that there is no dispute that there was an underlying contract (the engagement letter), the existence of an express contract makes a claim for unjust enrichment "futile," for such a claim can succeed "only in the *absence* of a valid express contract." Karski v. Brazilian Resources, Inc., 2009 WL 1255545, at *6 (W.D.N.C. May 4, 2009). As a result, the undersigned respectfully recommends that the Plaintiff's claim for unjust enrichment should be dismissed.

### B. Motion To Compel

Plaintiff's "Motion To Compel Defendant Lino J. Piedra To Respond To The Complaint" asks the Court to order Piedra to (1) "accept service of process in this case"; (2) "appear in Court to take responsibility of his illegal acts"; and (3) "respond in a timely manner to the Complaint of this case." (Document No. 17, p. 2). With respect to service of process, Ospina alleges that he

16

served the Complaint on Piedra via email on February 12, 2020. Id. at p. 1. Ospina also indicates that the U.S. Marshal, per this Court's August 5, 2020 order (Document No. 5), was ordered to serve process on Piedra and Griesinger. (Document No. 17, p. 1). In his reply to Defendant's response, Plaintiff adds additional methods of service that he employed (although he does not detail these methods in his initial motion, nor does he provide proof of service via these alleged methods): (1) delivering the Complaint via the U.S. Postal Service to Piedra's residence at 589 Eagle Drive, Avon, CO 81620 on both February 12, 2020 and October 24, 2020; and (2) delivering the Complaint via the U.S. Postal Service to Piedra's Post Office Box at P.O. Box 535, Vail, CO 81658. (Document No. 24, p. 1).

Defendant in opposition contends that he, Piedra, has not been validly served in a manner prescribed by Rule 4 of the Federal Rules of Civil Procedure. (Document No. 22, p. 2). Thus, he argues, the Court does not have personal jurisdiction over him, and he is not required under the Federal Rules to respond to the Complaint until validly served. Id. Plaintiff's effort to serve Piedra by email does not comply with service of process requirements under Rule 4, Piedra argues, and the U.S. Marshal's attempt to serve the summons and complaint failed because "mail is not delivered to Mr. Piedra's physical address;" rather, he receives mail at a Post Office Box in Colorado (which, he points out, Plaintiff knew because Piedra's mailing address was listed on the engagement letter). Id. at pp. 2-3.

This Court cannot order a defendant that has not been properly served to accept service of process, and thereby "appear in Court" and "respond in a timely manner to the Complaint," as Plaintiff's pending motion to compel requests. (Document No. 17, p. 2). Indeed, in a similar case brought by a *pro se* plaintiff, the district court in the District of Maryland declined to grant a plaintiff's motion to compel certain defendants to accept service of process. Stoyanov v. Mabus,

2014 WL 12731123, at *1 (D. Md. Apr. 30, 2014).  The district court found that in the absence of evidence that service was conducted "in the manner required by the applicable rules," there was "no legal authority for the relief" that the plaintiff's motion to compel sought.  Id. at *1-*2.

Here, Plaintiff's service by email is not a method laid out in Rule 4(e) of the Federal Rules of Civil Procedure, and it is also not one of the methods prescribed by the North Carolina statute at N.C.G.S. § 4(j) or by Colorado Rule of Civil Procedure 4.  Moreover, although Plaintiff indicates that he attempted to serve Defendant Piedra himself (apart from the U.S. Marshal's efforts to effect service) by mailing the Complaint to Piedra's physical Colorado address and Piedra's P.O. Box, he does not provide any proof of such service, and notably, he only adds this fact in his response to Piedra's reply to his motion to compel (which violates the Western District of North Carolina's Local Civil Rules).  See LCvR 7.1(e) (limits reply briefs "to a discussion of matters newly raised in the response").  Notably, service by mail would not be permitted in this action under Colorado Rule of Civil Procedure 4, and without evidence that he served the Complaint to Piedra's P.O. Box by certified or registered mail or mail with signature confirmation, his efforts to serve Defendant would also not be compliant with North Carolina's service of process statute.  N.C.G.S. § 4(j).

Still, the Court is mindful of Plaintiff's *pro se* status, and this Court's granting of his application to proceed *in forma pauperis*.  (Document No. 5).  Moreover, Plaintiff relied as a result of the Court's order on the U.S. Marshals Service to conduct service of process.  Although the U.S. Marshal properly served Griesinger via its registered agent through certified mail (Document No. 12), the attempt to serve Piedra via certified mail at his physical address in Colorado failed.  (Document No. 13).  Defendant receives mail only at his Post Office Box.  (Document No. 22, p. 3).  However, it was Plaintiff who should have identified for the U.S. Marshal the correct address for Defendant.  In fact, Plaintiff was specifically on notice that Defendant receives mail only at his

Post Office Box at the time that he signed the engagement letter, given that the engagement letter contains the P.O. Box address, as Defendant rightfully points out. (Document No. 22, p. 3); see also (Document No. 1-1, p. 2).

In recognition of Plaintiff's *pro se* status, however, the Court will *sua sponte* allow the Plaintiff a short extension of time to properly serve Defendant Piedra.

## IV.  RECOMMENDATION AND ORDER

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendant Griesinger Associates Inc.'s "Motion To Dismiss" (Document No. 15) be denied without prejudice in part and granted in part. Specifically, the undersigned recommends that Defendant Griesinger's motion to dismiss be denied without prejudice as to Plaintiff's breach of contract claim but granted as to Plaintiff's claims for injunctive relief, violation of the North Carolina Unfair and Deceptive Trade Practices Act at N.C. Gen. Stat. § 75-1.1, civil conspiracy, fraud, unjust enrichment, and punitive damages.

**IT IS FURTHER ORDERED** that Plaintiff's "Motion To Compel Defendant Lino J. Piedra To Respond To The Complaint" (Document No. 17) is denied. However, the Court will *sua sponte* allow Plaintiff 30 days from the date of this order to serve Defendant Piedra consistent with the Rules.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and

Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED AND ORDERED**.

Signed: February 11, 2021

David C. Keesler
United States Magistrate Judge